# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| KRISTOPHER LEE MOORE, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 14-3419-CV-S-MDH-P |
| IAN WALLACE, | ) ) ) |
| Respondent. | ) ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Kristopher Lee Moore, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on September 29, 2014, seeking to challenge his 2008 conviction and sentence for first degree robbery, which was entered pursuant to an Alford plea[1] in the Circuit Court of Greene County, Missouri.

The petition raises six grounds for relief: (1) that plea counsel was ineffective for failure to investigate; (2) that plea counsel was ineffective for lack of communication and miscommunication with petitioner concerning the Sentencing Assessment Report and the 15-year plea offer by the prosecutor; (3) that plea counsel was ineffective for failing to obtain full disclosure or supply petitioner with discovery; (4) that plea counsel was ineffective for "failure to properly investigate, assess, and present a defense on petitioner's prior record from New Jersey"; (5) that the prosecutor violated petitioner's rights by withdrawing the 15-year plea offer and seeking the maximum sentence due to petitioner exercising his right to have a preliminary hearing; and (6) that plea counsel was ineffective for failure to raise the issue that petitioner only should have been charged with second degree robbery rather than first degree robbery.

---

[1] North Carolina v. Alford, 400 U.S. 25 (1970).

Noting that petitioner's sole point on appeal from the denial of his Mo. Sup. Ct. Rule 24.035 post-conviction relief motion was the allegation set forth in Ground 2 of the petition, respondent contends that that Grounds 1, 3, 4, 5, and 6 are procedurally defaulted. Respondent further contends that the allegation set forth in Ground 2 is without merit and was denied by the Missouri Court of Appeals, and that the state court's judgment is entitled to deference.

## SUMMARY OF THE FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 24.035 post-conviction relief motion, the Missouri Court of Appeals summarized the facts as follows:

> Kristopher Lee Moore ("Movant") pleaded guilty to first-degree robbery and received a 25-year sentence. He now claims that his Rule 24.035 motion for post-conviction relief was wrongly denied after an evidentiary hearing because he proved that bad advice he received from his attorney rendered his guilty plea involuntary. Specifically, Movant claims that if his lawyer had not advised him "that if he entered a plea of guilty . . . he would likely receive less than a 15-year sentence," he would have either taken an earlier 15-year plea offer or insisted on going to trial. Finding no merit in his claim, we affirm.
>
> **Facts and Procedural Background**
>
> *The underlying plea and sentencing hearings*
>
> On October 3, 2008, Movant appeared with defense counsel and informed the trial court that he wanted to plead guilty. Movant testified that he "had [been given] enough time to talk to [defense counsel]" about his decision to enter the guilty plea and was "satisfied with [defense counsel's] services[.]" Movant confirmed that his plea "was an open plea" in that there was "no plea agreement with the State[.]" The guilty plea became an "*Alford* plea" after Movant disagreed with the State's description of how Movant had displayed the gun he used during the robbery.
>
> The prosecutor announced that Movant was facing a "range of punishment . . . from ten years to thirty years or life in the Department of Corrections." Movant confirmed that he was "pleading guilty . . . hoping for a more favorable result in terms of sentence than [he] would [receive] if [he] went to trial[.]" The trial

court reminded Movant that "there's no plea agreement with the State in this case" and asked Movant if anyone had "made any promises to [him] about the outcome of [his] case or otherwise to try to get [him] to plead guilty?" Movant replied, "No, sir."

Movant also understood that the trial court would not make its sentencing decision until it had reviewed the Sentencing Assessment Report with its included recommendations and had "heard argument from the prosecutor and [defense counsel]." The trial court accepted Movant's guilty plea upon finding, among other things, that Movant's plea had been entered "voluntarily and with an understanding of his rights."

At the January 2009 sentencing hearing, the State argued in favor of a 25-year sentence. Defense counsel argued that the court should impose "a fifteen-year sentence . . . under [section] 559.115, with a placement in the Institutional Treatment Center, so that [Movant] can receive the drug treatment that clearly he needs in an institutional setting." Defense counsel further argued that the trial court could deny probation after treatment if it was not satisfied with Movant's progress. The trial court stated that "the appropriate sentence is incarceration. It's a question of how long."

After announcing its 25-year sentence, the trial court placed Movant under oath and again inquired about defense counsel's representation. Movant confirmed that "during that time leading up to [his] plea and to [his] sentence," defense counsel did "everything on [Movant's] case [Movant] asked him to do" and did not do anything that he was asked not to do. When asked if Movant was satisfied with defense counsel's services, Movant replied, "I guess so." Movant went on to state:

> Sir, I just - - I don't - - I'm being honest with you. I mean, I'm a little shocked. I pled guilty because I was told I'd lose [at] trial. They offered me fifteen years, and I'm going to turn around and get twenty-five because I can't win [at] trial, not because I commit - - I don't know, sir. I guess I'm - - I'm content with it. I don't have a choice.

### The Motion Hearing

The motion court held an evidentiary hearing on Movant's motion in January 2013. Movant testified via videoconference that he had received "a fifteen-year plea" offer from the State. Movant

rejected that offer after discussing it with defense counsel. Movant acknowledged that he was informed during his guilty plea that the sentencing range he faced "was ten to thirty" years and that it could be a life sentence. Movant also understood that "there was no plea agreement because [he] wasn't going to take the plea agreement that was offered."

On cross-examination, Movant testified that "[i]t was highly recommended by [defense counsel] that [Movant] would only receive fifteen years under Missouri State guidelines." The prosecutor followed up by specifically asking if defense counsel had promised Movant that if Movant pleaded guilty he "would get fifteen years or less[.]" Movant responded, "No, sir. It was not a promise." Movant also testified that he "would have been happy with a fifteen-year sentence in the Department of Corrections."

Defense counsel provided the following testimony. An offer "for a fifteen-year sentence, with probation denied" was made by the State prior to Movant's preliminary hearing. Movant rejected that offer and "requested to have the preliminary hearing and see the State's evidence." That initial 15-year offer was the State's only plea offer. Defense counsel "had discussions [with Movant] about whether to have [a] trial, whether to offer a plea to the Court and proceed to sentencing or not, [and] which route to go to try to resolve the allegations." Defense counsel

> expressed [his] opinion to [Movant] that [he] believed that if [Movant] went to trial, the State would have sufficient evidence for the jury to find him guilty beyond a reasonable doubt, as charged, and that he would likely face a stiffer sentence if he did go to trial than if he accepted responsibility for his actions by entering a guilty plea. That [opinion] was in conjunction with discussions about the sentencing guidelines.

Defense counsel discussed with Movant "the presumptive sentence, the aggravating sentence, and the mitigating sentence" under the sentencing guidelines, and he told Movant that they could ask the trial court "for a lesser than the presumptive sentence under the guidelines." Defense counsel "explained to [Movant] that the ultimate decision would be made by [the trial court] and that [the trial court] would listen to arguments and suggestions of the respective counsel, counsel for the State and [defense counsel], but that ultimately neither counsel had control over [the trial court], and

> the [trial court] has the final decision." Defense counsel believed that he did tell Movant that he "thought the [trial court] would likely follow the sentencing guidelines and would likely not give more than a fifteen-year sentence and might possibly give less than a fifteen-year sentence[,]" and he believed that "based on that advice, [Movant] decided to follow [defense counsel's] recommendation." Defense counsel "didn't promise [Movant] what [the trial court] would decide. I never promise to my client what the [trial court] will do."

(Doc. No. 7, Ex. 6, pp. 2-5). (footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

### **GROUND 2 – INEFFECTIVE ASSISTANCE OF COUNSEL**
(Regarding lack of communication and miscommunication with petitioner concerning the Sentencing Assessment Report and the 15-year plea offer by the prosecutor)

In Ground 2, petitioner contends that plea counsel was ineffective "for lack of communication, and miss communication [sic] about the Sentence Assessment Report and the amount of time." (Petition at p. 5). More specifically, petitioner states that "Petitioner learned from recent court decisions in Fry and Lofler that counsel failed to communicate a plea deal

---

[2] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

offered by the state.  Same is to be true here.  Counsel had it within himself to convince Petitioner to take a 15 year deal.   This was a guarantee!   His recommendation of "I can get you 10 to 12 years."   Counsel <u>knew</u> he could not get that.   Petitioner rejected the states plea deal based on erroneous advice from his counseler. [sic]   Counsel had a mental issue to deal with with Petitioner.   Counsel should have had pressed the issue to take the plea offered."  (Attachment to Petition at p.3).   (emphasis in original).   Further, according to petitioner "[c]ounsel bolstered continueously [sic] he would lose at trial.   All the more reason to convince the Petitioner to take the deal.   This falls far below the standards of assistance of counsel in violation of Petitioner's Constitutional rights."   <u>Id</u>.

In order to succeed on his claim of ineffective assistance of counsel, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).   Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances.   <u>See</u>, <u>e.g.</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 687-90 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential.   It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . ."   <u>Id.</u> at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."   <u>Id.</u>   There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."   <u>Id.</u>

On appeal from the denial of his Rule 24.035 motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

### Applicable Principles of Review and Governing Law

"The motion court's findings are presumed correct[,]" ***Storey v. State***, 175 S.W.3d 116, 125 (Mo. banc 2005), and "the movant bears the burden of proving otherwise." ***McCain v. State***, 317 S.W. 3d 657, 659 (Mo. App. S.D. 2010). We review the denial of a post-conviction motion for clear error. Rule 24.035(k); ***Woods v. State***, 176 S.W. 3d 711, 212 (Mo. banc 2005). "[W]e view the record in the light most favorable to the motion court's judgment, accepting as true all evidence and inferences that support the judgment and disregarding evidence and inferences that are contrary to that judgment." ***Hardy v. State***, 387 S.W. 3d 394, 399 (Mo. App. S.D. 2012). The motion court may "believe of disbelieve the testimony of any witness, including that of the movant[,]" ***Clay v. State***, 297 S.W. 3d 122, 124 (Mo. App. S.D. 2009), and we "defer to the motion court's determinations of credibility." ***Id.***

"To prove ineffective assistance of counsel, a defendant must show counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney, and defendant was thereby prejudiced." ***State v. Nunley***, 923 S.W.2d 911, 922 (Mo. banc 1996) (citing ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).

### Analysis

Movant argues that he "received ineffective assistance of counsel due to counsel's improperly misleading him about the consequences of his plea." As a result, Movant claims his "plea was not entered in a knowing, voluntary and intelligent manner."

Movant correctly argues that "[m]isadvice about the direct sentencing consequences of a guilty plea can amount to ineffective assistance of counsel[.]" citing ***Hao v. State***, 67 S.W. 3d 661, 663 (Mo. App. E.D. 2002). In ***Hao***, the State conceded that the motion court erred in deciding the motion without first holding an evidentiary hearing when the motion alleged that the movant's lawyer had incorrectly advised him about parole eligibility. ***Id.*** at 663. The court noted that "[w]hile neither the court nor counsel is obligated to inform a defendant about parole eligibility, erroneous advice about it can affect the voluntariness of a guilty plea." ***Id.***

> Here, Movant did receive an evidentiary hearing, and it established that Movant was not misled about the sentence he could receive. Beyond merely stating at his plea hearing that no one had made promises that caused him to plead guilty, Movant affirmatively testified at the motion hearing that defense counsel did not promise him that he would receive a sentence of 15 years or less. *Cf. Gold v. State*, 341 S.W. 3d 177, 182 (Mo. App. S.D. 2011) (the movant's negative responses about "other promises" refuted his claim of a "'guaranteed' or 'assured' sentence"). Movant was informed that the sentencing range was up to 30 years or life, and he knew that he did not have a plea agreement that promised a particular sentence.
>
> Defense counsel testified that he recommended the guilty plea. And he admitted telling Movant that the trial court "would *likely* not give more than a fifteen-year sentence and *might possibly* give less than a fifteen-year sentence." (Emphasis added.) "A mere prediction or advice of counsel will not lead to [a] finding of legal coercion rendering a guilty plea involuntary[,] *Loudermilk v. State*, 973 S.W.2d 551, 554 (Mo. App. E.D. 1998), especially if counsel adds, as here, that "there is no guarantee what the sentence will be." Defense counsel informed Movant that "ultimately" the lawyers did not control the trial court and the trial court would make "the final decision" on Movant's sentence. Defense counsel tesitified that he did not "promise [Movant] what [the trial court] would decide."
>
> The testimony at the evidentiary hearing established that there was no "positive representation upon which [Movant wa]s entitled to rely." *Jones*, 211 S.W.3d at 213. Movant's point is denied, and the denial of post-conviction relief is affirmed.

(Doc. No. 7, Ex. 6, pp. 6-9). (footnotes omitted).

The resolution of Ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the

Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[3] Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 2 is denied.

## GROUNDS 1, 3, 4, 5 & 6 – PROCEDURAL DEFAULT

In Ground 1, petitioner contends that plea counsel was ineffective for failure to investigate. In Ground 3, petitioner contends that plea counsel was ineffective for failing to obtain full disclosure or supply petitioner with discovery. In Ground 4, petitioner contends that plea counsel was ineffective for "failure to properly investigate, assess, and present a defense on petitioner's prior record from New Jersey." In Ground 5, petitioner contends that the prosecutor violated petitioner's rights by withdrawing the 15-year plea offer and seeking the maximum sentence due to petitioner exercising his right to have a preliminary hearing. In Ground 6, petitioner contends that plea counsel was ineffective for failure to raise the issue that petitioner only should have been charged with second degree robbery rather than first degree robbery.

Grounds 1, 3, 4, 5, and 6 are procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred

---

[3] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

> unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner did not raise grounds 5 or 6 in his amended Rule 24.035 motion, and that although petitioner did present Grounds 1, 3, and 4 in his amended Rule 24.035 motion, he did not raise them on appeal from the denial of that motion. Therefore, Grounds 1, 3, 4, 5, and 6 are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why these grounds were not pursued on appeal from the denial of his Rule 24.035 motion and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing

Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Grounds 1, 3, 4, 5, and 6. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Grounds 1, 3, 4, 5, and 6 is barred.

Grounds 1, 3, 4, 5, and 6 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

    /s/ Douglas Harpool  
DOUGLAS HARPOOL  
UNITED STATES DISTRICT JUDGE

Springfield, Missouri,

Dated: June 18, 2015.